**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling**

**UNITED STATES OF AMERICA**,

        Plaintiff,

    v.                                    **Criminal No. 5:13-CR-30-05**
                                            Judge Bailey

**ROCCI WADE**,

        Defendant.

**ORDER DENYING MOTION FOR JUDGMENT**
**OF ACQUITTAL AND MOTION FOR NEW TRIAL**

Pending before this Court are Defendant's Post Trial Motions: I. Motion for Judgment of Acquittal and II. Motion for New Trial [Doc. 163]. The Government filed its response [Doc. 177], and the Motions are ripe for decision.

On July 9, 2013, defendant, Rocci Wade ("defendant") was named in four counts of a nineteen count Indictment [Doc. 1]. Count One charged defendant and other listed co-defendants with conspiracy to possess with intent to distribute and to distribute oxycodone; Count Fourteen charged defendant with the use of a telephone to facilitate the distribution of oxycodone; Count Fifteen charged the defendant with the use of a telephone to facilitate the distribution of oxycodone; and Count Nineteen charged the defendant with distribution of oxycodone on or about April 20, 2013. Prior to trial, Counts Fourteen and Fifteen were dismissed by the Government. The trial in this case occurred on January 29 and 30, 2014. After deliberations, the jury returned verdicts of guilty on Counts One and Nineteen.

1

On February 13, 2014, the defendant filed his post-trial motions.  The first part of the motion, the Motion for Judgment of Acquittal, seeks a judgment of acquittal on the basis that the Government witnesses who were co-defendants and other purchasers were unreliable inasmuch as such testimony in direct examination was elicited from persons who were persuaded by promises of leniency or other inducements to assist the Government, and that there was insufficient evidence to sustain the convictions.

The Motion for New Trial raises three claims:

1.	That the United States Attorney violated the defendant's rights protected by the Fifth Amendment to the Constitution of the United States by his reference at summation that the jury had all the evidence it needed for a verdict of guilty "except a confession [by the defendant]."

2.	The United States Attorney raised a prohibited fact by informing the jury by direct examination that the witness's husband was deceased, elicited during testimony about the husband's drug use, and that the Court's curative instruction did not relieve the error.

3.	The United States Attorney in summation misstated the evidence of the plea agreements by representing to the jury that the witnesses who had agreed to plead guilty did not "have to give up Rocci Wade . . . " and that the plea agreements "[don't] say and [you must] testify against Mr. Wade."

### Discussion

With respect to the Motion for Judgment of Acquittal, there was more than sufficient evidence to sustain the conviction.  The argument that the Government witnesses were unreliable fails inasmuch as it was up to the jury to assess the credibility of the witnesses.

2

According to defendant the evidence introduced at trial was unreliable since testimony against defendant was elicited from persons who were allegedly persuaded by promises of leniency and/or other inducements to assist the Government. "In reviewing the sufficiency of the evidence following a conviction, the court is to construe the evidence in the light most favorable to the Government, assuming its credibility, and drawing all favorable inferences from it, and will sustain the jury's verdict if *any* rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 319 (1979) (emphasis in original); **United States v. Lomax**, 293 F.3d 701, 705 (4th Cir.), *cert. denied,* 513 U.S. 1135 (2002). 'If there is substantial evidence to support the verdict, after viewing all of the evidence and the inferences therefrom in the light most favorable to the Government,' the court must affirm. **United States v. Murphy**, 35 F.3d 143, 148 (4th Cir.1994), *cert. denied,* 513 U.S. 1135 (1995). Furthermore, this court 'cannot make [its] own credibility determinations but must assume that the jury resolved all contradictions in testimony in favor of the Government.' **United States v. United Med. & Surgical Supply Corp.**, 989 F.2d 1390, 1402 (4th Cir. 1993)." **United States v. Penniegraft**, 641 F.3d 566, 571-72 (4th Cir. 2011).

In this case, defendant claims the evidence was insufficient to convict defendant because the witnesses called by the Government were allegedly persuaded by promises of leniency or other inducements. In essence, defendant is advancing an argument that the witnesses called by the Government were not credible. As noted above, it is a role of the jury (fact finder) to observe witnesses and weigh their credibility.

As defendant correctly notes a number of co-defendant (co-conspirators) were

3

called to testify at trial. It is also true that a number of these individuals prior to trial had entered into plea agreements with the Government. Additionally, two other witnesses for the prosecution, Isaac Stewart and Ashlyn Allen, avoided state charges for simple possession of a controlled substance by assisting during the investigation by making a controlled purchase of oxycodone from the defendant. Counsel for defendant continually emphasized during the testimony of these various witnesses that such witnesses had cooperated with the Government and hoped to gain some benefit through their cooperation. In fact, counsel for defendant, without objection by the Government, introduced the actual plea agreements into evidence. Defense counsel strenuously cross-examined each witness regarding any criminal background, if any, as well as the details of the witnesses' cooperation and so-called benefits the witness hoped to receive through cooperation. Despite these arguments and attacks upon the credibility of the witnesses, the jury found defendant guilty.

The jury also heard testimony from a number of other witnesses who had no motivation to cooperate or offer evidence against defendant in exchange for anything. These witnesses included a number of customers of defendant who were neither charged nor facing charges at the state or federal level. These witnesses (similar to the other witness) confirmed defendant's role in the conspiracy and his involvement in the distribution of oxycodone. Moreover, the jury received audio and video evidence clearly demonstrating defendant's knowing participation in the distribution of oxycodone.

Because the crux of defendant's motion for acquittal rests on a credibility attack upon the witnesses, such motion must necessarily fail. The jury, as the finder of fact, was presented with substantial evidence concerning defendant's role in the conspiracy as well

4

as his actual distribution of oxycodone. The jury obviously determined the evidence obtained from the witnesses was credible; the jury's determination in this regard cannot be disturbed.

With respect to the issues raised in the Motion for New Trial, the defendant claims that he is entitled to a new trial since, according to defendant, the Assistant United States Attorney violated his Fifth Amendment constitutional rights. According to defendant, the reference by the Assistant United States Attorney during closing argument that the jury had all the evidence it needed for a verdict of guilty "except a confession" violated his Fifth Amendment rights. Defendant also claims that the Assistant United States Attorney raised a prohibited fact during direct examination of witness, Genea Midcap. In particular, defendant claims that the inquiry of Midcap somehow violated an earlier motion in limine by the Court to avoid any argument that the death of Midcap's husband was due to the distribution of drugs by defendant. Finally, defendant claims the Assistant United States Attorney, during closing argument, misstated the evidence (the terms of the written plea agreements).

Defendant claims that the Government violated his Fifth Amendment rights during the closing argument. During closing argument the Assistant United States Attorney, in part, summarized the case as follows:

> So I will finish now and just summarize for you, as I was thinking about this case last night, as I was preparing as to what I would say, and then I got up early this morning and did a little more thinking and talking to myself, I realized that this case has basically everything an investigation would have, except what often you don't have. And that's a confession. Think about it.

5

We have six witnesses who dealt directly with him, eyeball to eyeball, hand to hand. And other than the codefendants, who have their plea agreements – they always have a reason to shade their testimony. I'm not going to say they did, but certainly the defense can argue they do – but you have people like the last witness you heard. They have no motive to stick it to Rocci. So you have six eyewitnesses who dealt directly with him, over and over and over again.

You have audio tapes, the phone tapes from the wiretap, and the audiotapes from the front seat of the car and backseat of the car.

You have the text messages from the wiretaps. All this physical evidence, confirming what the other six said. Not only do the six confirm each other, but you have solid physical evidence that bolsters what they all say. You have the seizure at the house, but you also have the seized four pills after the controlled buy was over.

Noodle, I never thought I'd have to talk about a dog. I've been around a long time, but I've never weaved a dog into my closing statement, but as Mr. Bernard said of the one officer, how many times have you seen Noodle jumping in the car without his master. Noodle, unfortunately, blocked the camera for us, but Noodle would not have been in that car unless the man in the green hoody was the defendant.

And finally, my best witness of all, is the jury. You're the silent witness, because the judge will tell you you must use your common sense. You don't go back into that jury room and leave your common sense out here. So

when you use your common sense, follow your oath, and I would ask that

you do so and you find the defendant guilty as charged.

Transcript, pp. 13-15.

It is clear from reviewing the transcript in its totality that the reference to the lack of a confession was simply that. The Assistant United States Attorney was merely indicating that there was an overwhelming amount of evidence with the exception of any confession. To argue the isolated remark somehow inferred that defendant should have confessed is simply not supported by the entire context of the statement. Contrary to defendant's argument there is nothing in that isolated statement indicating or inferring that defendant should have confessed.

In order to prevail in an argument that the prosecutor engaged in misconduct during closing argument, a defendant much show the following: (1) that the prosecutor's remarks were improper and (2) that the remarks prejudicially affected defendant's substantial rights so as to deprive him of a fair trial. ***United States v. Chorman***, 910 F.2d 102, 114 (4th Cir. 1998).

As noted above, the passing and isolated reference to the lack of a confession was not an improper remark. However, assuming for the sake of argument the remark was improper, defendant would still be required to prove prejudice. Various factors are relevant in determining whether a prejudice actually occurred including:

(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the defendant; (4) whether the comments were deliberately placed before the jury to divert

attention to extraneous matters; (5) whether the prosecutor's remarks were invited by improper conduct of defense counsel; and (6) whether curative instructions were given to the jury. *See,* **United States v. Scheetz**, 293 F.3d 175, 186 (4th Cir.), *cert. denied*, 537 U.S. 963 (2002) *see also,* **United States v. Wilson**, 135 F.3d 291, 299 (4th Cir. 1998) (these factors are examined in context of the entire trial, and no one factor is dispositive).

A review of the above-referenced factors all weigh against defendant's argument. There is no evidence the "confession" remark misled the jury. It is also clear the remark was isolated. Finally, the competent proof and evidence introduced against defendant was overwhelming. Accordingly, defendant's claim that he is entitled to a new trial based upon this issue is without merit.

Defendant also claims that the Government violated the Court's prior motion *in limine* during the direct examination of witness, Genea Midcap. Prior to trial, the testimony of Midcap was subject to a motion *in limine*. The Government was permitted to elicit from Midcap the fact that her husband Derek was deceased. According to the Government, the purpose of that testimony was to remove any question in the jury's mind as to why Derek Midcap was not present as a witness during trial.

Midcap testified that during the period of the charged conspiracy, she and her deceased husband, Derek, purchased oxycodone from defendant. She also indicated that the last time that she and her husband purchased oxycodone from defendant was shortly before her husband's death. Contrary to defendant's argument there was no testimony or indication by the Government that Midcap's death was tied, in any manner, to his drug use or the drugs distributed by defendant. In fact, this Court specifically advised the jury

8

through a limiting instruction (at the time of Midcap's testimony) that the evidence was not offered to establish that Midcap's drug use lead to his death, and the Court went further to specifically instruct the jurors that Midcap's death was, in fact, not due to his drug use. The testimony of Midcap did not violate any pre-trial motion in limine. However, to the extent there may have been any question or potential confusion, the trial court specifically instructed the jury that Midcap's death was in no way related to his drug use. As such, defendant's motion for a new trial in this respect will be denied.

Defendant also argues the Assistant United States Attorney during closing argument misstated the substance of the plea agreements. According to defendant, the prosecutor allegedly misstated the evidence by arguing that nothing in the plea agreements required witnesses to specifically testify against defendant. Defendant further claims that such actions of the prosecutor constituted plain error and affected the substantial rights of the defendant.

No objection was made to the closing argument of the prosecutor concerning the discussion of the plea agreements. In fact, a review of the prosecutor's closing argument concerning the plea agreements reflects that the terms of such evidence were accurately depicted. There is nothing in the plea agreements (which were themselves in evidence) requiring any witness to specifically discuss or inculpate the defendant. Rather the plea agreements required complete and truthful cooperation and potentially grand jury and/or trial testimony.

Accordingly, Defendant's Post Trial Motions: I. Motion for Judgment of Acquittal and II. Motion for New Trial **[Doc. 163]** is **DENIED**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record herein.

**DATED:** March 21, 2014.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE